**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTHONY BRADLEY,

        Plaintiff,

v.

JERSEY CITY POLICE DEPARTMENT, et al.,

        Defendants.

Civil Action No. 12-5236 (SRC)

**OPINION**

**APPEARANCES:**

Anthony Bradley
Hudson County Correctional Center
35 Hackensack Ave.
Kearny, NJ 07032
    Plaintiff pro se

**CHESLER,** District Judge

    Plaintiff Anthony R. Bradley, a pre-trial detainee confined at Hudson County Correctional Center in Kearny, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

---

[1] This Court previously denied without prejudice Plaintiff's first application for leave to proceed in forma pauperis, administratively terminated this action, and granted Plaintiff leave to apply to re-open by either prepaying the filing fee or submitting a complete application for leave to proceed in forma pauperis. Plaintiff has now submitted a complete Application [5] for leave to proceed in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's Application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to re-open this matter and to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on May 4, 2012, police officers M.R. Kilroy and J. Perez, of the Jersey City Police Department, responded to a 9-1-1 call for an ambulance by "aggressively" entering his mother's residence, grabbing and handcuffing Plaintiff, and taking him outside and throwing him to the ground, where they humiliated him.[2] Plaintiff further alleges that the handcuffs were tight and were left on that way all the way to the medical center.[3] Plaintiff alleges that the officers did not read him his Miranda[4] rights.

Plaintiff contends that he was arrested without probable cause and with the excessive use of force, allegedly in violation of the Fourth Amendment to the U.S. Constitution. In addition, Plaintiff asserts that his accusers and the arresting officers are "white and Spanish," and that if he were a white male he would have been treated differently. The Court construes this as an attempt to state a claim for violation of his constitutional right to equal protection of the laws.

---

[2] The Court notes that this is the second of two complaints that Plaintiff has filed regarding the events of May 4, 2012. In the other complaint, Plaintiff alleged that three individuals beat him at 4:00 A.M. that morning, causing him permanent injuries to his vision and hearing. See Bradley v. Merqucz, Civil Action No. 12-5885 (D.N.J.). It appears that these injuries necessitated the call for an ambulance described in this Complaint.

[3] Plaintiff does not state whether he required treatment only for his pre-existing wounds or whether he suffered any new wounds during his arrest. To the extent Plaintiff contends that he suffered additional injuries during his arrest, he fails to describe them.

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

2

In addition to Officers Kilroy and Perez, Plaintiff names as defendants here the Jersey City Police Department and Chief Tom Comey. Plaintiff seeks monetary damages and dismissal of all criminal charges pending against him.[5]

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 28 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915 and 1915A because Plaintiff is proceeding in forma pauperis against governmental employees and entities.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim[6], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS

---

[5] Plaintiff does not state the nature of the pending criminal charges.

[6] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

3

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), cited in Thomaston v. Meyer, No. 12-4563, 2013 WL 2420891, *2 n.1 (3d Cir. June 5, 2013); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

4

IV. ANALYSIS

A.   Vicarious Liability

Plaintiff has named as defendants here the Jersey City Police Department and Chief Tom Comey. As the claims against these defendants appear to be based solely on an untenable theory of vicarious liability, those claims will be dismissed.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See Connick v. Thompson, 131 S.Ct. 1350, 1358-61 (2011); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (holding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126

(3d Cir. 2000). "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale, 318 F.3d at 584 (citations omitted). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Id. (citations omitted). The Third Circuit has observed, "[t]here re three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale, 318 F.3d at 584 (footnote, citations, and quotation marks omitted). Thus, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

Here, Plaintiff has alleged no facts suggesting the existence of a policy or custom that was the "moving force" behind the alleged violations of his constitutional rights. Nor has Plaintiff alleged any facts suggesting that Chief Comey was personally involved in Plaintiff's allegedly false and excessively forceful arrest. Accordingly, the claims against the Jersey City Police Department and Chief Comey will be dismissed for failure to state a claim.

B.      Fourth Amendment Claims

The Fourth Amendment to the United States Constitution provides that "The right of the

people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." Here, Plaintiff pleads that his Fourth Amendment rights were violated in two ways: an arrest without probable cause and an arrest accomplished through the excessive use of force.

    1.    <u>Arrest Without Probable Cause</u>

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 268-69 (3d Cir. 2000) (collecting cases). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d Cir. 2012) (citing <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 634 (3d Cir. 1995) and <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002) (citing <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995), quoted in <u>Wallace v. Fegan</u>, 455 F.App'x 137, 139 (3d Cir. 2011). See also <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter.").

Here, Plaintiff has not described the information known to the police when they arrested him, nor has he described the charges for which he was arrested. Instead, he has asserted only the fact of arrest, which he characterizes as lacking in probable cause. The fact of arrest, alone,

7

is not sufficient to raise Plaintiff's right to relief above a "speculative level." See Twombly, 550 U.S. at 555. Cf. Hines v. Whalen, Civil Action No. 10-2850, 2011 WL 5452535, *5-*6 (D.N.J. Nov. 7, 2011) (dismissing a claim for false arrest that provided no details as to the circumstances of arrest). Accordingly, this claim will be dismissed for failure to state a claim.

2. Excessive Force in Arrest

Plaintiff also alleges that the arresting officers threw him to the ground, humiliated him, and handcuffed him tightly. Plaintiff characterizes his arrest as involving excessive force in violation of the Fourth Amendment.

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989), cited in Lamont v. New Jersey, 637 F.3d 177, 182-83 (3d Cir. 2011). See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). Clearly, here, there is no question that Plaintiff has adequately alleged that a seizure occurred.

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Graham v. Connor, 490 U.S. 386, 396 (1989) and Scott v. Harris, 550 U.S.

8

372, 383 (2007). Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396; quoted in Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.

Here, again, Plaintiff has failed to describe the nature of the crime at issue, whether the officers had reason to believe that he posed an immediate threat to their safety, or whether the officers had reason to believe that he was actively resisting arrest or attempting to flee. Certainly, Plaintiff's reference to his "accusers" along with the fact of his arrest, purportedly in response to a 9-1-1 call, suggests that there are more facts and circumstances relevant to the question whether the officers' actions were "objectively reasonable." In the absence of a fuller factual description, and where the only harm Plaintiff is alleged to have suffered is the discomfort of tight handcuffs, Plaintiff's conclusory characterization of the officers' use of force as excessive is insufficient to raise his right to relief above a "speculative level." This claim will be dismissed for failure to state a claim. Cf. Graham, 490 U.S. at 396 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (citation omitted)); Rogers v. Essex County, 429 F.App'x 79 (3d Cir. 2011) (affirming

9

dismissal of excessive force claim based upon allegations that officers verbally abused arrestee and placed him in jail).

C.  The Equal Protection Claim

Plaintiff asserts that his accusers and the arresting officers were "white and Spanish," and contends that he would have been treated differently if he were a white male.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), quoted in Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 109 (3d Cir. 2011).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor. Village of Arlington Heights, 429 U.S. at 265-66, cited in Community Services, Inc. v. Wind Gap Mun. Authority, 421 F.3d 170, 177 (3d Cir. 2005).

Here, Plaintiff has not even alleged disparate treatment. He has simply theorized, without any factual support, that these officers might have treated him differently if he were a white

10

male. He has alleged no facts suggesting any discriminatory motive, whatsoever, in the officers' treatment of him. As this Court has already noted, Plaintiff has provided no information about the nature of the crime he was alleged to have committed or about the circumstances of his arrest. In such a factual vacuum, There is no basis for the Court to infer that the officers' use of force derived from racial bias rather than from the other information and circumstances confronting them at the time of arrest. This claim will be dismissed for failure to state a claim.

D.    Failure to Provide Miranda Warnings

Plaintiff alleges that the arresting officers failed to provide his Miranda warnings at the time of arrest. Plaintiff does not state whether he was questioned at that time or whether he made a statement to police at that time.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court set forth certain procedural safeguards that must be employed, to protect an individual's Fifth Amendment privilege against self-incrimination, whenever authorities take an individual into custody, or otherwise deprive him of his freedom in any significant way, and subject him to questioning. According to the Supreme Court,

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

Miranda v. Arizona, 384 U.S. at 444 (footnote omitted).

To the extent Plaintiff seeks to assert a claim for damages based directly upon the failure to give a proper Miranda warning, or questioning or acquisition of a statement in violation of his Miranda warning rights, he fails to state a claim. "[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself. ... The right protected under

11

the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in [Miranda] is merely a procedural safeguard and not a substantive right." Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) (citations omitted). Thus, Plaintiff has no free-standing Fifth Amendment right to remain silent during interrogation. Nor does Plaintiff have a free-standing Fifth Amendment claim for denial of the right to counsel during questioning. See James v. York County Police Dept., 160 F.App'x 126, 133 (3d Cir. 2005) (citing Giuffre). In addition, a person's Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688 (1972) (plurality opinion). Accordingly, the Miranda claim for damages will be dismissed with prejudice for failure to state a claim. Cf. Gunset v. Marsh, Civil Action No. 12-4735, 2012 WL 3229145 (D.N.J. Aug. 6, 2012) (dismissing with prejudice damages claim arising out of alleged Miranda irregularities during interrogation).

E.    Dismissal of Criminal Charges

Plaintiff also has asked for dismissal of the state criminal charges against him.

It is not generally the role of the federal courts to interfere in pending state judicial proceedings. A federal court must abstain from addressing requests for injunctive relief against state court proceedings so long as the constitutional issues involved may be addressed adequately in the course of the state proceedings. Younger v. Harris, 401 U.S. 37 (1971) (addressing abstention from state criminal proceedings). The United States Court of Appeals for the Third Circuit has enunciated three requirements that must be met before Younger abstention may be invoked:

> (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings

12

> afford an adequate opportunity to raise federal claims. Whenever all three of these requirements are satisfied, abstention is appropriate absent a showing of bad faith prosecution, harassment, or a patently unconstitutional rule that will cause irreparable injury to the plaintiff.

Port Auth. Police Benevolent Ass'n Inc. v. Port Auth. Of New York and New Jersey Police Dept., 973 F.2d 169, 173 (3d Cir. 1992) (citing Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)). Certainly, the pending state criminal proceedings are judicial in nature and implicate important state interests. Plaintiff has failed to allege any facts suggesting that the state proceedings do not afford an adequate opportunity to raise federal claims related to those proceedings. Accordingly, this Court will not interfere with Plaintiff's ongoing state criminal proceedings. Cf. Bey v. Passaic Municipal Court, Civil Action No. 13-2653, 2013 WL 1949856 (D.N.J. May 9, 2013) (declining, under Younger and Port Auth. Police Benevolent Ass'n, to enjoin state criminal proceedings).

In addition, insofar as Plaintiff seeks a declaratory judgment that his Miranda rights were violated, see 28 U.S.C. § 2201 (Federal Declaratory Judgment Act), he is not entitled to such relief. Where a state criminal prosecution has begun before initiation of a federal declaratory judgment action, equitable principles preclude the granting of declaratory relief that might disrupt state criminal proceedings except in very unusual circumstances, where the plaintiff has no adequate remedy at law in the state criminal proceeding or where necessary to prevent immediate irreparable injury. See Samuels v. Mackell, 401 U.S. 66 (1971); Younger v. Harris, 401 U.S. 37 (1971); Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (applied in Anthony v. Council, 316 F.3d 412 (3d Cir. 2003) (in which plaintiffs sought declaratory and injunctive relief related to state child support proceedings)). Again, Plaintiff has alleged no facts that would justify the granting of declaratory relief that might interfere with his criminal proceedings.

This Court expresses no opinion as to whether the circumstances of any interrogation or

the use at trial of any statement obtained from Plaintiff would violate the Miranda rule.

## V. CONCLUSION

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies described herein, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[7] An appropriate order follows.

Stanley R. Chesler
United States District Judge

Dated:

---

[7] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013) (collecting cases). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.